## STEAMSHIP COMPANY v. TUGMAN.

1. The members of a foreign corporation, when it sues or is sued in a court of the United States, are conclusively presumed to be citizens or subjects of the State or country which created it.

2. The citizenship of the parties, if it be shown by the record, need not be set out in the petition for the removal of a suit from the State court to the Circuit Court of the United States.

3. Upon the filing of the requisite petition and bond in a suit which is removable, the State court is absolutely divested of jurisdiction of such suit, and its subsequent orders are *coram non judice,* unless its jurisdiction be, in some form, actually restored.

4. A failure to file the transcript within the time prescribed by the statute does not restore that jurisdiction, and the Circuit Court must determine whether, in the absence of a complete transcript, or when one has not been filed in proper time, it will retain jurisdiction, or dismiss the suit, or remand it to the State court.

5. A party having filed his petition and bond for the removal of a suit pending in a State court, the court ruled that the suit was not removable, but should there proceed. He subsequently consented to an order requiring the issues to be heard and determined by a referee, and thenceforward, until final judgment, contested the case as well before the referee as in the courts of the State. *Held,* 1. That the jurisdiction of the State court was not thereby restored, and that his consent to the order of reference must be construed as merely denoting a preference for that mode of trial. 2. That his objection to the exercise of jurisdiction by the referee and the State court, after he had filed his petition and bond, added nothing to the legal strength of his position on the question of removal.

ERROR to the Supreme Court of the State of New York.

This action was commenced on the 23d of June, 1875, by Tugman, against the National Steamship Company, which his complaint alleges to be "a foreign corporation, having an office or general manager and place of business in the city of New York." The summons and complaint were served on the company's agent in New York on the succeeding day.

On the 14th of July, 1875, the company entered its appearance, and at the same-time filed a petition and bond, in proper form, for the removal of the action into the proper Circuit Court of the United States. The petition alleges that the plaintiff, " at the commencement of the action, was, and ever since has been, and now is, a citizen of the State of Illinois ; " that "the petitioner is a corporation created and existing under and by virtue of the laws of the United Kingdom of Great Britain and Ireland, and has its principal offices for the transaction of its business at Liverpool, in said kingdom," where, it is further alleged, the meetings of its stockholders and directors were held, its records kept, its authorities acted, and from which the latter issued their orders. The petition also states that the company had not designated any person or persons residing in any county of New York on whom process might be served, as prescribed in the act of the legislature of that State of April 10, 1855.

The sufficiency of the bond was not questioned, but the motion that the court proceed no further in the cause was, after argument by counsel, overruled, July 21, 1875.

The company filed its answer Aug. 3, 1875. On the 17th of January, 1877, " on the consent of the parties," all the issues in the action were, by order of court, referred to Henry Nicoll, " to hear and determine the same." The parties appeared before the referee, when the company — presenting the petition, -bonds, and papers, upon which the removal of the action was theretofore asked — contended that the State court was ousted of jurisdiction ; that the referee had no power or authority to proceed therein ; and that the action was in fact removed into, and was then pending in, the Circuit Court of the United States for the Eastern District of New York. The objection was overruled by the referee, who ordered the trial to proceed ; to which decision and order the defendant's attorney duly excepted. The trial proceeded notwithstanding the company's objection.

On the 8th of June, 1877, the referee reported in favor of the plaintiff for the sum of $4,324.53. Exceptions were filed by the company ; but they were overruled, and judgment entered in accordance with the report on the 27th of June, 1877.

The company appealed to the general term of the Supreme Court, where the judgment was affirmed on the nineteenth day of February, 1878.  Upon appeal to the Court of Appeals of the State, the judgment of the Supreme Court was affirmed, the court saying: "In regard to the question raised upon the trial, that this court was ousted of jurisdiction by the proceedings instituted to remove the case into the United States Circuit Court, we think that the petition was defective in not showing that the defendant was an alien citizen or subject of a foreign power *at the time of the commencement* of the action, but only when the petition was signed and sworn to.  The omission referred to brings the case directly within the decision in the case of *Pickner* v. *Phœnix Insurance Co.*, 65 N. Y. 195.  It may also be remarked that since the order refusing to remove the case, the defendant consented to the appointment of a referee to determine the case, and submitted to his jurisdiction, by trying the action on the merits.  It is at least questionable whether he has not thus waived his right to insist that a removal had been had."

The steamship company brought this writ of error.

*Mr. B. C. Chetwood* and *Mr. John Chetwood* for the plaintiff in error.

*Mr. F. J. Fithian* for the defendant in error.

Mr. Justice Harlan delivered the opinion of the court.

The underlying question in this case is whether, within the meaning of the Constitution and of the statutes determining the jurisdiction of the Circuit Courts of the United States, and regulating the removal of causes from State courts, a corporation created by the laws of a foreign State may, for the purposes of suing and being sued in the courts of the Union, be treated as a "citizen" or "subject" of such foreign State.

In *Ohio & Mississippi Railroad Co.* v. *Wheeler*, 1 Black, 286, the court, speaking by Mr. Chief Justice Taney, said, that in the previous case of *Louisville, Cincinnati, & Charleston Railroad Co.* v. *Letson*, 2 How. 497, it had been decided, upon full consideration, "that where a corporation is created by the laws of a State, the legal presumption is, that its members are citizens of the State in which alone the corporate body has a legal

existence; and that a suit by or against a corporation, in its corporate name, must be presumed to be a suit by or against citizens of the State which created the corporate body; and that no averment or evidence to the contrary is admissible, for the purposes of withdrawing the suit from the jurisdiction of a court of the United States." *Marshall* v. *Baltimore & Ohio Railroad Co.*, 16 How. 314; *Covington Drawbridge Co.* v. *Shepherd*, 20 id. 227; *Insurance Company* v. *Ritchie*, 5 Wall. 541; *Paul* v. *Virginia*, 8 id. 168; *Railroad Company* v. *Harris*, 12 id. 65.

To the rule, thus established by numerous decisions, the court adheres. Upon this branch of the case it is, therefore, only necessary to say that if the individual members of a corporation, created by the laws of one of the United States, are, for purposes of suit by or against it in the courts of the Union, conclusively presumed to be citizens of the State by whose laws that corporation is created and exists, it would seem to follow, logically, that the members of a corporation, created by the laws of a foreign State, should, for like purposes, be conclusively presumed to be citizens or subjects of such foreign State. Consequently, a corporation of a foreign State is, for purposes of jurisdiction in the courts of the United States, to be deemed, constructively, a citizen or subject of such State.

But it is suggested that the petition for the removal of the action into the Circuit Court of the United States is radically defective in that it does not show that the National Steamship Company was a corporation of a foreign State at the commencement of the action; that the allegation, upon that point, refers only to the time when the removal was sought. If, in suits in which the jurisdiction of the courts of the United States depends upon the character of the parties, it is material, under the act of March 3, 1875, c. 137, to show the citizenship of the parties at the commencement of the action, it is sufficient to say that the averment in the original complaint, that the company is a foreign corporation, supplemented by the averment in the petition for removal, that it is a corporation created by, and existing under, the laws of the United Kingdom of Great Britain and Ireland, covers the whole period from the commencement of the action to the application for removal.

It is not always necessary that the citizenship of the parties be set out in the petition for removal. The requirements of the law are met if the citizenship of the parties to the controversy sought to be removed is shown, affirmatively, by the record of the case. *Railway Company* v. *Ramsey*, 22 Wall. 322; *Robertson* v. *Cease*, 97 U. S. 646.

The only remaining question which need be considered is whether the jurisdiction of the State court was, in any form, restored, after the company filed its petition and bond for removal. The defendant in error insists that it was. The petition was accompanied by a bond which, it is conceded, conformed to the statute, and was ample as to security. Upon the filing, therefore, of the petition and bond, — the suit being re-movable under the statute, — the jurisdiction of the State court absolutely ceased, and that of the Circuit Court of the United States immediately attached. The duty of the State court was to proceed no further in the cause. Every order thereafter made in that court was *coram non judice*, unless its jurisdiction was actually restored. It could not be restored by the mere failure of the company to file a transcript of the record in the Circuit Court of the United States within the time prescribed by the statute. The jurisdiction of the latter court attached, in advance of the filing of the transcript, from the moment it became the duty of the State court to accept the bond and proceed no further; and whether the Circuit Court of the United States should retain jurisdiction, or dismiss or remand the action because of the failure to file the necessary transcript, was for it, not the State court, to determine.

Nor was the jurisdiction of the State court restored when the company, subsequently, consented to the order requiring the issues to be heard and determined by a referee selected by the parties, or when it appeared and contested the case, as well before the referee as in the State courts, up to final judgment. The right of the company to have a trial in the Circuit Court of the United States became fixed upon the filing of the petition and bond. But the inferior State court having ruled that the right of removal did not exist, and that it had jurisdiction to proceed, the company was not bound to desert the case, and leave the opposite party to take judgment by default. It was

at liberty, its right to removal being ignored by the State court, to make defence in that tribunal in every mode recognized by the laws of the State, without forfeiting or impairing, in the slightest degree, its right to a trial in the court to which the action had been transferred, or without affecting, to any extent, the authority of the latter court to proceed. The consent, by the company, to a trial by referee was nothing more than an expression of its preference — being compelled to make defence in the State court — for that one of the several modes of trial permitted by the laws of the State. It is true that when the cause was taken up by the referee, as well as when heard in the Supreme Court of the State and in the Court of Appeals, the company protested that the Circuit Court of the United States alone had jurisdiction after the petition and bond for removal were filed. But no such protests were necessary, and they added nothing whatever to the legal strength of its position. When the State court adjudged that it had authority to proceed, the company was entitled to regard the decision as final, so far as that tribunal was concerned, and was not bound, in order to maintain the right of removal, to protest at subsequent stages of the trial against its exercise of jurisdiction. Indeed, such a course would scarcely have been respectful to the State court, after its ruling upon the point of jurisdiction had been made.

What we have said upon this subject is fully sustained by our former decisions, particularly *Railroad Company* v. *Koontz*, 104 U. S. 5; *Railroad Company* v. *Mississippi*, 102 id. 135; *Kern* v. *Huidekoper*, 103 id. 485; and *Insurance Company* v. *Dunn*, 19 Wall. 214.

The judgments herein of the Court of Appeals of New York and of the Supreme Court of New York will be reversed, and the cause remanded with directions that the latter court accept the bond, tendered by plaintiff in error, for the removal of the cause to the Circuit Court of the United States for the Eastern District of that State, and proceed no further in the cause; and it is

*So ordered.*